IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

|  |  |
|---|---|
| TONY STEWART, ) | |
| ) | |
| Movant, ) | |
| ) | Case. No. 1:12-cv-1089-JDB-egb |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255,
DENYING CERTIFICATE OF APPEALABILITY,
CERTIFYING APPEAL WOULD NOT BE TAKEN IN GOOD FAITH AND
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Before the Court is the *pro se* 28 U.S.C. § 2255 motion of the Petitioner, Tony Stewart, to vacate, set aside or correct his sentence (the "Petition"). (Docket Entry ("D.E.") 1.) Stewart, Bureau of Prisons ("BOP") register number 22253-076, is an inmate at the Federal Correctional Institution in Oakdale, Louisiana. The United States has filed an answer. (D.E. 11.) For the reasons discussed below, the Petition is DENIED.

*Background*

**I.      Case Number 08-10049**

On April 21, 2008, a federal grand jury returned a sixteen-count indictment against Stewart and others. (Indictment, *United States v. Stewart*, No. 1:08-cr-10049-JDB-1 (W.D. Tenn.), D.E. 1.) Relevant to the Petition, Count 1 charged that Stewart and his co-defendants conspired to unlawfully, knowingly and intentionally possess with the intent to distribute, and did distribute, over 50 grams of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. (*Id.*)

According to the presentence report ("PSR"), on August 14, 2006, Tennessee Bureau of Investigation ("TBI") Special Agent Paul Moore conducted a traffic stop on a vehicle driven by Stewart on Highway 105, near McLemoresville, Tennessee. (PSR ¶ 4.) During the stop, Agent Moore seized approximately one-half ounce of crystal methamphetamine. (*Id.*) Stewart admitted to being involved in methamphetamine trafficking, and agreed to work as a confidential informant ("CI"). (*Id.*) He briefly did so, but failed to fulfill his obligations and was deemed unreliable. (*Id.*)

On November 13, 2007, agents from the West Tennessee Drug Task Force ("DTF"), working with Agent Moore, used a CI to purchase approximately one-eighth ounce of crystal methamphetamine from Stewart. (*Id.* ¶ 5.) Again on November 14, 15 and 16, the CI purchased an additional three-eighths ounces of methamphetamine and two bags of white powder from Movant. (*Id.* ¶¶ 7–9.) On November 28, 2007, the CI bought approximately three grams of methamphetamine and a firearm from Stewart. (*Id.* ¶ 12.) At this November 28, 2007 purchase, the inmate told the CI that he was a convicted felon, and that he knew the CI was a convicted felon. (*Id.*) On December 3, 2007, the CI obtained one-half ounce of methamphetamine and the next day, secured 27.3 grams of methamphetamine from Stewart. (*Id.* ¶¶ 14–15.) Finally, on December 14, 2007, the CI purchased one gram of crystal methamphetamine and another firearm from Movant. (*Id.* ¶ 16.)

On April 24, 2008, DTF agents executed an arrest warrant at a co-defendant's home where Stewart was also residing. (*Id.* ¶ 19.) The agents obtained consent to search the property including a hog barn located behind the residence. (*Id.*) Inside the barn, they discovered components of a methamphetamine lab, including an active pill soak, inside an old shop vacuum.

(*Id.*)  From the search of the residence, agents seized a baggie containing methamphetamine, marijuana and rolling papers from the master bedroom, coffee filters with powder residue from the kitchen, an envelope with names written on it from under the master bedroom mattress, a used meth slider from the night stand in the master bedroom, various paraphernalia for smoking methamphetamine throughout the house, a jar of unknown liquid from under a bathroom sink, a title to a four-wheeler under the bathroom tub, digital scales, a jar with powder residue, and two plates with residue and razor blades from a kitchen cabinet.  (*Id.*)  Stewart was arrested on April 24, 2008 and agents explained his *Miranda* rights.  (*Id.* ¶ 23.)  He provided a signed, hand-written statement describing his involvement in drug-related activities since approximately 1993–94.  (*Id.*)  Based on the information contained in the statement, the probation office calculated that during an eight month period in 2007, the inmate and his co-conspirators sold approximately 240 ounces, or 6,804 grams, of methamphetamine.  (*Id.* ¶ 29.)

Pursuant to a written Plea Agreement, Stewart appeared before this Court on December 22, 2008 and pled guilty to Count 1 of the indictment.  (Min. Entry, *United States v. Stewart*, No. 1:08-10049-JDB-1 (W.D. Tenn.), D.E. 138; Plea Agreement, *id.*, D.E. 141.)  According to the investigation and analysis contained in the PSR, he received six criminal history points, placing him in criminal history category III.  (PSR ¶¶ 44–46.)  With a total offense level of 38 and a criminal history category of III, his suggested sentencing guideline range was 292–365 months.  (*Id.* ¶ 65).

At a hearing on April 15, 2009, the Court sentenced Stewart to a term of imprisonment of two hundred and ninety-two months, four years supervised release, and a $100.00 special assessment.  (Min. Entry, *United States v. Stewart*, No. 1:08-10049-JDB-1 (W.D. Tenn.), D.E.

3

188.) Judgment was entered on April 17, 2009. (D.E. 192.) On April 27, 2009, Stewart filed a *pro se* notice of appeal and motion to withdraw his guilty plea, alleging that he did not understand the nature of the plea due to mental illness and the medication he was taking. (D.E. 200.) At the July 10, 2009 hearing, Stewart informed the Court that he wished to withdraw his notice of appeal and motion. (D.E. 212.) The Court granted the request from the bench. (D.E. 213.) The United States Court of Appeals for the Sixth Circuit issued an order dismissing his appeal on July 15, 2009. (D.E. 214.) He did not file a petition for certiorari.

## II. Case Number 12-1089

On August 12, 2013, Stewart filed a *pro se* Petition, presenting one issue: whether he qualified for a downward departure pursuant to § 5H1.4 of the United States Sentencing Guidelines ("U.S.S.G.") due to his poor health. (*Stewart v. United States*, No. 12-1089, (W.D. Tenn.) D.E. 1 at 3.)

*Legal Standard*

Section 2255(a) provides that

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). In order to succeed on a motion under the statute, a petitioner must show "'(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Shaw v. United States*, ___ F. App'x ___, 2015 WL 1296092, at *2 (6th Cir. Mar. 23, 2015),

*petition for cert. docketed*, (U.S. June 2, 2015) (No. 14-10043) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)).

*Analysis of Petitioner's Claim*

I. **Statute of Limitations and Equitable Tolling**

The statute of limitations governing the filing of a Petition is set forth in 28 U.S.C. § 2255(f) and provides:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). Stewart does not allege any action by the government creating an impediment, any new right recognized by the Supreme Court, or the discovery of new facts through the exercise of due diligence. Therefore, his Petition is timely only if it was filed within one year after his criminal judgment became final.

A conviction generally becomes final "upon conclusion of direct review." *Johnson v. United States*, 457 F. App'x 462, 464 (6th Cir. 2012) (citing *Sanchez-Castellano v. United States*, 358 F.3d 424, 426 (6th Cir. 2004)). In this case, that date was ninety days after entry of the Sixth

Circuit's July 15, 2009 order granting Stewart's motion to dismiss his appeal pursuant to Fed. R. App. P. 42(b). *See Johnson*, 457 F. App'x at 464–65; *see also Clay v. United States*, 537 U.S. 522, 524–25 (2003) (holding that "[f]or the purpose of starting the clock on § 2255's one-year limitation period . . . a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction"). Stewart's Petition was filed on April 5, 2012—more than a year after his conviction became final. Absent equitable tolling, it is time-barred.

"The one-year statute of limitations for filing a § 2255 petition is subject to equitable tolling." *Jefferson v. United States*, 730 F.3d 537, 549 (6th Cir. 2013) (internal quotation marks omitted). "[E]quitable tolling allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Id.* (internal quotation marks omitted). A petitioner is entitled to equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks omitted). "The petitioner bears the burden of demonstrating that he is entitled to equitable tolling." *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003) (citation omitted). The Sixth Circuit has explained that "courts should not be rigid in applying this standard and should 'consider each claim for equitable tolling on a case-by-case basis.'" *Jefferson*, 730 F.3d at 549 (quoting *Jones v. United States*, 689 F.3d 621, 627 (6th Cir. 2012)). However, equitable tolling is to be used sparingly by the federal courts. *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010) (citation omitted). "Absent compelling equitable

considerations, a court should not extend limitations by even a single day." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000) (citation omitted).

      A.      *Extraordinary Circumstance*

Stewart avers that due to his poor health he was unable to research, write, or file a Petition without the assistance of another inmate, and because of this, the one-year limitation period should be equitably tolled. (*Stewart v. United States*, No. 12-1089, (W.D. Tenn.), D.E. 1 at 10; D.E. 2 at 5.) The Sixth Circuit has held that

> [A] petitioner's mental incompetence, which prevents the timely filing of a habeas petition, is an extraordinary circumstance that may equitably toll AEDPA's one-year statute of limitations. To obtain equitable tolling of AEDPA's statute of limitations on the basis of mental incompetence, a petitioner must demonstrate that (1) he is mentally incompetent and (2) his mental incompetence caused his failure to comply with AEDPA's statute of limitations. In short, a blanket assertion of mental incompetence is insufficient to toll the statute of limitations. Rather, a causal link between the mental condition and untimely filing is required.

*Ata v. Scutt*, 662 F.3d 736, 742 (6th Cir. 2011); *McSwain v. Davis*, 287 F. App'x 450, 456 (6th Cir. 2008) (citations omitted) ("[M]ental incompetence is not a *per se* reason to toll a statute of limitations."); *Price v. Lewis*, 119 F. App'x 725, 726 (6th Cir. 2005) (citations omitted) ("Illness—mental or physical—tolls a statute of limitations only if it actually prevents the sufferer from pursuing his legal rights during the limitations period."); *Nowak v. Yukins*, 46 F. App'x 257, 259 (6th Cir. 2002) (citations omitted) ("The mental incapacity of the petitioner can warrant the equitable tolling of the statute of limitations. The petitioner must make a threshold showing of incompetence, and demonstrate that the alleged incompetence affected [petitioner's] ability to file a timely habeas petition.").

Stewart's blanket assertion that he suffers from Parkinson's disease and is in generally poor health does not "demonstrate that . . . he is mentally [or physically] incompetent[.]" *Ata*, 662

7

F.3d at 742. He has not provided any evidence of his Parkinson's disease, such as treatment records, or a diagnosis from a medical professional. The only proof of any impairment is from a colloquy during the sentencing hearing, where Stewart's counsel asked the Court to consider his client's medical condition, which was described as "a potential diagnosis of Parkinson's", in fashioning a sentence, which the Court did by recommending that Stewart be housed in the nearest BOP medical facility. (*United States v. Stewart*, No. 1:08-10049-JDB-1 (W.D. Tenn.), Sentencing Hr'g Tr. at 7–8, D.E. 220.) Similarly, Movant told the United States probation officer that he had been suffering from undiagnosed excessive body shakes for several years. (PSR ¶ 55.)

There is also no evidence that the inmate's alleged disability prevented the timely filing of his Petition. *Ata*, 662 F.3d at 742 ("[A] blanket assertion of mental incompetence is insufficient to toll the statute of limitations."); *Hammond v. Jobe*, No. 1:11-cv-131, 2012 WL 1059939, at *8–9 (E.D. Tenn. Mar. 28, 2012) (finding the petitioner had sufficiently alleged that his mental health issues, diagnosed by a medical professional, actually prevented him from timely filing a habeas petition). Stewart was competent enough to send handwritten letters to the Clerk's office on November 21, 2011 and July 17, 2013, requesting "documentation relevant to . . . fighting [his] case." (*United States v. Stewart*, No. 1:08-10049-JDB-1, (W.D. Tenn.), D.E. 217, 222.) He also filed two *pro se* motions to modify his sentence under 18 U.S.C. § 3582(c)(2), which demonstrated that his condition did not prevent him from timely pursuing his rights. (*Id.*, D.E. 225, 229.)

Further, unlike the movant in *Ata*, who "specifically alleged that his petition was untimely because he had been hospitalized on numerous occasions for paranoid schizophrenia, and because he ha[d] been and continue[d] to be medicated by the Michigan Department of Corrections (MDOC) for paranoid schizophrenia and other psychoses" during the time period for filing his

8

petition, 662 F.3d at 743 (internal quotation marks omitted), Stewart states only that his abilities are impaired, and that this prevented him from researching, writing, and filing the Petition within the statute of limitations. (D.E. 1 at 10; D.E. 2 at 5.) He offers no information about what, if anything, occurred during the one-year period that prevented him from timely filing his Petition.

      B.     *Pursuing Rights Diligently*

Even if Stewart's medical condition was an extraordinary circumstance that prevented him from timely filing his Petition, he has failed to offer any evidence demonstrating "that he has been pursuing his rights diligently," *Holland*, 560 U.S. at 649 (internal quotation marks omitted), from October 2009 through April 5, 2012, such that his untimeliness should be excused.

      C.     *Conclusion*

Movant is not entitled to equitable tolling. "The doctrine of equitable tolling is applied sparingly by federal courts," and is typically used "only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) (citations and internal quotation marks omitted). His blanket assertion that his physical and mental impairments prevented him from meeting the deadline for filing his Petition is not supported by any evidence, aside from his own statements and those of counsel at the sentencing hearing. His Petition is DENIED.

## II. Merits of Petitioner's Claim

Even if the Petition was subject to equitable tolling, it would still be denied because 28 U.S.C. § 2255 does not provide the Court with the authority to grant a downward departure under U.S.S.G. § 5H1.4. *See Engle v. United States*, 26 F. App'x 394, 397 (6th Cir. 2001) ("A district court may not modify a defendant's federal sentence based on the defendant's ill health, except

9

upon a motion from the Director of the Bureau of Prisons."); *United States v. Moses*, No. 96-CR-80274, 2015 WL 1322380, at *2 (E.D. Mich. Mar. 20, 2015) (construing the defendant's § 2255 petition as a request for compassionate relief under § 3582(c)(1)(A) because the basis for the petition was defendant's allegedly poor health and denying the request because it lacked authority to grant relief absent a motion from the Director of the BOP). Here, the BOP Director has not submitted a motion for relief under 28 U.S.C. § 3582(c)(1)(A) on Stewart's behalf. Therefore, his Petition is DENIED.

## III. Appeal Issues

Twenty-eight U.S.C. § 2253 requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate. The COA must indicate the specific issue(s) that satisfy the required showing. 28 U.S.C. § 2253(c)(2) & (3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks and citation omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). A COA does not require a showing that the appeal will succeed. *See Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814–15 (6th Cir. 2011); however, courts should not issue a COA as a matter of course. *See Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005).

For the reasons previously stated, the issue raised by Movant is time-barred and, therefore, he cannot present a question of some substance about which reasonable jurists could differ. The Court therefore DENIES a certificate of appealability. The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)–(b), does not apply to appeals of orders denying § 2255 motions. *See Kincade v. Sparkman*, 117 F.3d 949, 951–52 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). *See Kincade*, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. *See* Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a)(4)–(5).

In this case, for the same reasons it denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is DENIED.[1]

IT IS SO ORDERED this 5th day of June, 2015.

s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE

---

[1] If Stewart files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days.